The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Cavanaugh presiding. Good afternoon, we'll 1st call. 4-23-0370 people of the state of Illinois versus Gavin Masters. Will counsel for the appellant please state your name for the record. Yes, your honor, my name is Kurt Lovelace and I represent the appellant Gavin Masters. Council for the peli Allison page Brooks on behalf of the people. Thank you, Mr. Lovelace. You may proceed. Thank you, your honor may please of the court. My journey with Gavin Masters started as an attorney back in 2017 when I took his case from the appellate public defender on direct appeal. So I've known Gavin Masters for quite some time as an attorney and Gavin as a client. However, my journey with Gavin actually started in 2015 when I happened to run into him in the Adams County Jail when he was dressed in civilian clothes, not jail clothes, getting ready to go to trial where he was charged with murder and attempted It struck me at that time how young he looked. He was 18 years old at the time, but in my opinion, he looked 14 and that stuck with me. It stuck with me through throughout the ensuing years and then ultimately when I took up his case. Now, we've been before this court now 3 times. Again, I started representing him when I took over in his direct appeal and we've been to this court two other times on this post-conviction petition. Counsel, counsel, good afternoon. Sorry to interrupt your remarks so early this afternoon, but I do have a number of questions and I want to make sure that we have time to cover them, please. Would you agree this afternoon that in our looking at the trial court's decision in this case at the third stage hearing, the standard of review is manifest error? Would you agree? I know you've also indicated in your brief that it could be de novo, but in the end, this court wouldn't be wrong if we used manifest error. Isn't that correct? I don't agree, although I understand the court's leaning towards a manifest error standard of review. As I've indicated in my brief, the de novo review comes from the language that the court used, specifically in the court order where the court merely indicated that it had the opportunity to develop a record concerning the science of brain psychology development in an as-applied challenge to the defendant's sentence for an aggregate of 115 years, and also the court's language that the third stage proceedings allowed the court to receive new evidence concerning the factors announced by the United States Supreme Court in Miller v. Alabama, and I think here's the key, as potentially expanded to the inclusion of young adults based on the Illinois Supreme Court decision in People v. Harris. There's no doubt that the circuit court in Adams County has had some reluctance in embracing the Illinois here for the third time, and based upon my experience with this court as well as the language, I think the court continues to struggle with applying the law in this case. The court talks about the five Miller issues as something being styled or interpreted by Dr. Garbarino in his testimony, that he has somehow come up with these on his own, and that's not the case. These are the five Miller factors that the court must consider. Let me stop you here. I really wanted to focus, before we get into the factors and what this trial court said, on what this standard of review is. So, it has been described, would you not agree, by Illinois case law to be error that is clearly evident, plain, and indisputable, correct? Correct. And further, while this standard is less deferential than an abuse of discretion standard, it also has been described in case law, specifically a first district case, a RUDAC 2022 Illinois Appellate First 173023, but also a fourth district case. So, this is a standard that requires a reviewing court to give great deference to the trial court's factual findings, because the trial court stands in the best position to weigh the credibility of the witnesses who testify at a third stage evidentiary hearing. Would you agree that that is a good description of this standard of review? I agree, Your Honor, that the court deserves great deference when it applies the law. I respectfully submit that the court did not apply the law in this case, but I'm fully prepared to argue this on either standard, Your Honor. So, if we look at, for example, the order that this court entered, the trial court entered, in paragraph 14 of its written decision, it indicated with respect to the ACE test results that it couldn't give significant weight to these results due to, one, the lack of information it had regarding the questions, but also that the responses were not independently verified, and there was no effort that is not independently verified, there was no effort to corroborate that information in the answers with either the parents, the attorneys, or the witnesses, and thirdly, that there was absolutely no cross-check by Dr., I'm going to call him Dr. G, so I don't mispronounce his last name, with the PSI information. So, why was this error? Why was this indisputably wrong? Well, it's indisputably wrong, Your Honor, because on all three points that the court just outlined out of the court's order, the court's wrong. I mean, first, the court said it couldn't give significant weight to the ACE because it didn't know the questions. Well, that's just not true. I think the record shows there was a general, the colloquy, a general description of the questions rather than this was the question, this was the answer. Wasn't that what the record reflected, counsel? The record reflected that when asked, Dr. Garbarino testified as to the specific area, the type of questions. No, he did not verbatim give the questions, nor did the court, nor did the state on cross-examination request the specific questions. With regard to the other aspects of it, Dr. Garbarino talks about what sort of independent verification was done, and there was no independent investigation. The parents weren't interviewed. All that has been acknowledged. He did address that in his testimony on whether or not that would be necessary, and he determined that it was not necessary. There was a discussion about the possibility of those responses being overinflated. He testified that in his 30 years of experience that those questions and responses are under-representative. They're not overinflated, and he specifically then talked about a recent study that talked about when prisoners knew that they could benefit from overstating, there was some inflation of the answers, but not that much, and then he went through and looked at such a significant score, 99 out of 100, in Gavin Master's case and on cross-examination by the state, explained that even if there was some inflation, he was not indicating that there was, but even if there was some, that it would be minimal, and it wouldn't impact his opinion because Gavin Master's had such a high score. With regard to the court's third point or question within the order, it talked about no independent verification through the PSI, I believe what the report indicated. Well, cross-check with the PSI, pre-sentence investigative report. Right, and that's been troubling. That's come up now for the third time before this appellate court, and for the third time I think the court and the state misrepresents the PSI. The PSI is remarkably consistent with the evaluation and the answers of Gavin Master's. The only specific situation where there is any difference in the PSI is the question of whether or not he observed domestic abuse within his home. That was the one thing that everyone has taken hold of in making that comparison, and Dr. Garbarino addresses that in his testimony. He said oftentimes in the PSIs, defendants will, again, under-represent for various reasons. Family privacy. It could be because of the fact that you have a probation officer asking these questions. It could be, you know, the defendant just wants to appear to have grown up in a better household than he actually did, and that it's only after they're in prison and they have a chance to reflect that sometimes this understanding is, they come to the realization that these things have occurred. And again, that wasn't domestic violence as far as he was abused. He's never claimed that he's been abused. He could have inflated that and said he was. He did not. The court or the judge, or excuse me, Dr. Garbarino focused not on physical abuse or sexual abuse, but psychological maltreatment, which in most cases can be very, almost worse than those situations. But focusing on, excuse me for interrupting, what you just started with, though, the domestic violence. I mean, the trial court said in paragraph 22 that Dr. Garbarino said that the defendant, the defendant's reports to him demonstrated the Miller issues apply, but certainly didn't indicate what, if anything, was being referred to. So, I think the court there was expressing the lack of detail than the lack of substantiation, was it not? I'm not sure. I'm not sure what detail is missing, Your Honor, as far as the- Well, there was no specifics with respect to what incidents of domestic violence the defendant witnessed. Yeah, we're focusing on one question within one aspect of Dr. Garbarino's opinion. Well, that's what I'm focusing on now. I'm trying to take one at a time with respect to some of the trial court's concerns. And the specific issue with domestic violence, I believe there was testimony, if not, it was in the report that was attached to the amended petition that Gavin Masters did recall seeing domestic abuse between his, not his father, but his mother's husband and his mother. And that was the only reference to domestic abuse. And the state has taken a hold of that, and I've addressed this now for the third time with the indicating that that's the only one. And again, I fully acknowledge that in the PSI, when asked whether or not he experienced domestic abuse, he said no. That's the only inconsistency. Thank you. Counsel, I don't mean to monopolize. I know my panel will jump in if they have additional questions, but I do have a number of questions. This is obviously, as each case is important, but this certainly is. In paragraph 16, the trial court, as I read it, was concerned that neither Dr. Garba's report nor the testimony that he gave at the third stage hearing considered any information that was in the trial transcripts. And why would that not be a valid concern for the trial court? It's not a valid concern for the trial court, Your Honor, because it's not as if Dr. Garbarino has the facts wrong. He fully acknowledges an understanding of what occurred in this case, and that was that Gavin Masters, on July 4th of 2015, was hanging out with some friends, younger friends. They were in a house where there had been marijuana sold. There was an attempted sale of marijuana. One of the victims in this case grabbed the marijuana, and Gavin Masters shot him, killing him, and then shot the other individual, injuring him. And so there isn't an issue with regard to what happened in the case. So my question or my concern with that is, what does it matter that he didn't review the testimony as to what happened in the case? So a trial court is to consider, as one of the factors in sentencing, the nature and circumstances of the crime. Isn't that correct? Absolutely. And wouldn't, and Dr. Garibay, I'm sorry, and let me just call him Dr. G, does not believe, and articulated this during his testimony, that that is relevant. And so why wouldn't the trial court be concerned if it had to consider the circumstances that certainly any expert would have looked at, not only was there a decision to bring a gun, but to shoot five times, to kill one person, injure another, the bullets going into the second person while the person was begging for help? Why wouldn't those facts be important in the expert's opinion with regard to Miller? Well, Your Honor, with all due respect, the facts aren't that a person was begging for help and that Gavin Messers put two bullets in it. Those aren't the facts. And the court- Well, I apologize for misstating them. I was summarizing in the interest of time. No, I understand. Certainly, I have read the record. But go would be. But the point is, none of the facts, other than the very bare minimum with what you stated, were looked at. Again, Dr. Garibay fully acknowledges the crime and he doesn't get that wrong. He states that in his testimony. I think that he does indicate that he acknowledges the severity of the offense. He does not ignore what happened. But he also acknowledges that the severity of the offense does not impact the rehabilitative potential of Gavin Messers. He does state that. And I would agree completely that the trial court can consider the severity of the defense or the severity of the offense in making its determination of the sentence. But again, with regard to the Miller factors, one of them is the severity of the offense. The Dr. Garbarino did consider it. And his opinion is what his opinion is. And that is that 18-year-old Gavin Messers was a juvenile at the time the crimes were committed. With respect to paragraph 19 in his order, the trial court again expressed concern with regard to the totality of the information that was adduced by Dr. G. And specifically focused on the point that it was inconsistent with the information in the PSI and all of the addenda that were attached to the PSI. The addenda reflected that both parents attempted to discipline the defendant, that the parents themselves had a good relationship despite the fact that they were divorced, that the defendant had the basics that were needed for any youth, that is clothing, shelter, and food, so that the youth, the defendant wasn't homeless, for example. And these attachments weren't acknowledged in any way or considered by Dr. G. Why wouldn't that be a valid concern by the trial court in listening to this expert testimony? Well, again, I think they were considered by the courts. Let's talk about the parents. The parents were never married. They never lived together. Gavin Messers grew up with his mother. And the court identified psychological maltreatment. The record reflects that he did live with his father for a year. There was more discipline in the household. However, that did not keep Gavin Messers from sliding back on a different lifestyle when he wasn't under the direct supervision of his father. So, again, I think it's very consistent. And there's no indication that Dr. Garbarino didn't consider the PSI. We addressed some of the letters by the aunts, uncles, seventh grade teachers that the court seemed to feel had great weight in its decision. And, again, those letters were to put Gavin Messers in the best light so the court, the original trial court, would send him to the least amount of time. So I don't think there's evidence that Gavin Messers did not struggle with the psychological maltreatment and the situation that Dr. Garbarino was able to identify through his interviews and review of his, of the PSI, of his prison records, of his school records. Thank you. Thank you. Any remaining questions? Mr. Lovelace, do you have any others for the rebuttal? Thank you. Very well. Ms. Paige Brooks? It's Ms. Brooks, Allison Paige's double-barreled first name. Thank you. Oh, my apologies. No problem. Thank you. May it please the court and counsel, this is actually a pretty straightforward case, especially in light of the fact of the highly deferential standard review, which is, makes it really kind of impossible for the defendant to prevail on review in a case that was really, it seemed like most of the record actually supports the trial court's ruling. So it's not possible for the defendant to show that it's manifestly erroneous in the sense that the defendant had a burden here of showing a constitutional violation, proving it at the evidentiary hearing. And the standard here is under the proportionate penalty clause of the Illinois Constitution, the defendant has a burden of showing that his sentence is so wholly disproportionate as to shock the moral sense of the community, that is disproportionate to the seriousness of the offense. And the state's brief relies on the Pittman case, which is somewhat factually distinguishable in the sense that that was many stabbings of three victims who all died. And here it's a shooting, but it is an almost unequally serious offense in the sense that, as the trial court found, the defendant was shooting three times into the back of somebody who was running away. He stares down at the person he's going to paralyze, not just injure, but paralyze and coldly steps over the body of the dying victim and then leaves, does nothing to help them and leaves in trials to conceal the crime afterwards. So this is just a completely shocking and violent crime. And this is the type of thing where being a personal perpetrator of such a serious and violent crime, it makes it wholly distinguishable to the other sorts of cases where an already 18-year-old defendant was convicted by accountability. And then in which case their home life and other sort of things become a lot more relevant. But here, there's just like the Pittman case reveals when a defendant personally perpetrates against multiple victims, such serious violent behavior with such drastic consequences. There's just, it's not, it's also like in the Pittman case where even the judge in Pittman said, even if I had discretion, I would have given him life. Well, here it's a de facto life, but it's such lengthy consecutive sentences because despite having a pretty substantial mandatory minimums here, the judge, knowing the defendant was only 18, still gave him substantially in excess of the very stringent mandatory minimums for these very serious crimes. So it's not even a close case. Counsel, good afternoon. In focusing for a minute on one of the comments opposing counsel made, how would you respond to counsel's observation that this trial court, as other trial courts in this case, seemed very reluctant to acknowledge the Miller factors applied to this defendant, or could even apply to this defendant? And the inference I assumed is that perhaps the trial court started out with a mindset that maybe wasn't as open or fair as it should have been. How do you respond to that comment by opposing counsel? Well, the standard here is the only proportionate penalties clause, which goes back further than Miller in terms of how it was been applied in Illinois cases. Miller is a standard for defendants who are under 18 at the time of their offense, and it's not applicable to a defendant here. So there's no limits on the number of facts and circumstances that can be considered in terms of whether a defendant has met his burden of showing that his sentence is so wholly disproportionate to the seriousness of his as to shock the moral sense of the community. So the defendant, like in Pittman, that he had mental health struggles, but just that wasn't enough to show that his sentence was unconstitutional in the Illinois proportionate penalties clause. So here, the fact that if the defendant even claims that he, contrary to the PSI, had witnessed some domestic violence and relies on his adverse child experiences score, it's just not something that is a very small part of the case. It's not to make a big difference in terms of what seriousness of his crimes are as reflected by the trial transcripts and the facts and circumstances of the offense itself. The defendant's upbringing was not that atypical. So, I mean, it's not a situation where it was an extreme case of poor upbringing that, you know, I think he cites having played some violent video games. Counsel? Yes. His stepfather's in jail for meth offenses. He reports that he saw domestic violence. He reports that he saw his mother in a porn video. Do I get that right? Is that one of the facts? I don't remember that, your honor. Well, how do you verify these things? Well, first of all, on that one, I don't know how you verify it. What do you do? Ask the mother? Maybe I'm misremembering the facts, but I thought that was part of Dr. Garbarino's report. You used the phrase like it wasn't atypical. No marriage, no living together, a stepfather who's in jail for meth delivery. He begins using drugs at age 10. I don't see that that is anything other than atypical. Well, it is atypical in some respects, but I mean, it's not so extremely atypical that it's going to overwhelm the facts and circumstances of the crime and just make the court disregard everything else in the case. No, you don't disregard everything else, but do you place all the weight in your evaluation on the crime? Every murder has a tragic result. Well, that's true, but- It has ripple effects through the whole community and through families. So how do you balance that? Well, like one of the claims is the defendant had played violent video games. I mean, that was what I was trying to say is something that's not really that atypical. I mean, there are some facts in the case that are more atypical, but I'm saying things that were heavily relied upon is the fact that he played violent video games. It's not really atypical. I mean, a very popular game like Grand Theft Auto is not causing many 18-year-olds to go out and commit actual murders and shootings. It's not that common of a thing, even though it's a common video game. And that's why I guess that's what I'm trying to say is that many parts of this is not an atypical upbringing, and it's certainly not extreme, even if some of the things are atypical, but not so much that it's going to overwhelm the fact that he was the personal perpetrator of extreme violence, very horrible circumstances against multiple victims. And that just puts it into the Pittman category of despite the fact that the defendant Pittman had mental health struggles, didn't matter. I mean, his sentence is not so wholly disproportionate as to shock the moral sense of the community. It's not a close question. And to say the defendant somehow met his burden of showing that constitutional violation on this record, it's just impossible to meet the manifest error standard review. The trial court had many valid concerns about Dr. Garbarino's opinions, and the defendant tries to meet a lot of those, but it still stands that the defendant just didn't meet his burden here. He made it maybe a decent effort. But correct, correct me if I'm wrong. Do you think that it is, I'm sorry, go ahead. No, please. How do you, do you think it's more likely that a trial court would place heavier reliance on a PSI than an expert's opinion? Well, it just depends on what kind of information the expert's getting and whether they're, whether they are verifying the information they're getting. For example, the idea of- How did the PSI verify the information? Well, they're receiving information from more people than just the defendant. That's one important verification. For example, here, like Garbarino is looking at the defendant's version of events, but not consulting the trial transcripts to see what the actual evidence was. That's a really big limitation on his opinion, because if he's just talking to the defendant, the defendant doesn't sugarcoats the circumstances and doesn't say, oh, I shot somebody who was running away from me, or I coldly stepped over somebody, or I shot somebody who was pleading with me. Like as counsel says, this other person was injured. It's like, well, the extent of the injury actually matters a great deal. Just to call him, quote, injured instead of just permanently paralyzed, I think that's kind of a huge difference. So it does really matter like what kind of information and they're getting the source of information and whether they're making any effort to verify it with somebody other than a defendant. So that's why I guess the PSI is a lot more, the trial court could put a lot more reasonable reliance on that than Dr. Garbarino's opinion, because Garbarino, like he gives a 10-question questionnaire and talks three times on the telephone with the defendant, and that's the extent of what he gets to rely on. The trial court's going to look at that and say, no, you just haven't met your burden. I mean, it's nice that they got a doctor to- I think you've answered that question. Right. But the point is this, the persuasiveness. I mean, he has a doctor, so he got a long experience. They made a decent effort here, but it's just, they can't get past the facts of the case and they can't get past the circumstances of the shootings. And it's just, they cannot meet their burden. And especially with such a strenuous standard review, they just, it's impossible for them to win this appeal. So for those reasons, the state would request this course to affirm. Thank you, your honors. If you have no further questions. Very well. Thank you, Ms. Page. Mr. Loveless? I respectfully disagree with the appellant. If it's impossible for us to win in this case, I'm not sure why the court is even entertaining oral arguments in this case. It is not impossible. This wasn't just a good faith attempt. This was presenting evidence that the Miller factors apply. I'm not sure what possibly more could have been done in this case. Let me address a couple of things. The state relies heavily on the Pittman case. I'd like to point out that they say it's somewhat distinguishable. Let's talk about the Pittman case. Pittman was convicted of killing his 17-year-old girlfriend, his mother, and his 11-year-old sister or younger sister, her 11-year younger sister. Denzel stabbed the girlfriend 19 times, strangled her and fractured his jaw. He stabbed the mother who was on crutches numerous times and he stabbed her younger sister 29 times. So that's not just somewhat distinguishable. Again, I've heard these arguments before and if the courts are so bold to say that the severity of the fence outweighs any other factors that might be presented of the Miller factors, then it is impossible for anyone like Gavin Masters, who did commit the crimes of murder and attempted murder, to qualify as a juvenile. But that's not what the law is. The law doesn't say, hey, if this is a severe offense, then no dice. You don't have an opportunity to go to the other four factors. That's one of the factors that's recognized. And again, there's still this misstatement of the facts. There in no way was a situation where Gavin Masters shot someone while they were begging for their life. There's also been this misstatement of facts that he made some sort of comment to this person while he was lying on the ground. The evidence is he did leave the house. He stepped over them with a gun and left the house. Any reference to any comments made by Gavin Masters that can be used against him in making these claims that he made a statement to one of the victims didn't come out of his mouth. It came out of his 14-year-old girlfriend's mouth who made several outrageous comments to the person who was paralyzed on the ground. It was her comments, not Gavin Masters, and anything else is a misstatement of the facts. So it would appear that I think where the state struggles and judges struggle, and your honors my struggle, is, does Gavin Masters deserve the hope, the opportunity, to have a potentially 40-year sentence for murder and attempted murder at all because of the severity of the offense? Your honor, I say that he does. And again, that's not because I just feel that way. That's what the law is. It's just one factor. Dr. Garbarino addresses all of the other factors. Counsel, I have a question then. If this court should decide that a defendant is entitled to be resentenced, you are not asking that a judge other than Judge Brenner conduct the new sentencing hearing, are you? Well, I think there's a question. Do I want Judge Brenner to conduct it? I would say no. But am I asking this court? No, I'm not. Excuse me. That was not the question I asked, and I read your conclusion in your brief, and I wanted a clarification. So you are not. Is that correct? I would leave that for the court to decide. I'm not asking for that, your honor. Okay. Thank you. Again, with regard to the standard here, and I respect one of the justices here's comments about his upbringing. Again, the court, trial court, found it not atypical, which I think is lowering the bar extremely as to what society expects out of parenting. I'd also like to address the issue that somehow the seriousness of the offense is sugar-coated. Again, there's no indication that Dr. Garbarino had the facts wrong with regard to the severity of the offense. Very well, counsel. No further questions. Then I will thank you both. We will take this matter under advisement and now stand recess.